IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZAKEE HAMILTON, | : |
| | : |
| Petitioner, | :   CIVIL ACTION NO. 22-1755 |
| | : |
| v. | : |
| | : |
| BARRY SMITH and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, | : |
| | : |
| Respondents. | : |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                                                           July 7, 2022

A state-court jury convicted the *pro se* petitioner of first-degree murder and other offenses after he shot and killed one person and wounded three others. For these convictions, the petitioner received a life sentence. After unsuccessfully challenging his convictions and sentence on direct appeal, he pursued post-conviction collateral relief. Although he was also unsuccessful in this endeavor at the trial court and intermediate appellate court levels, he is currently pursuing a petition for allowance of appeal with the Supreme Court of Pennsylvania. Despite having this petition for allowance of appeal pending, the petitioner has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this court and a motion to stay this case while the Supreme Court of Pennsylvania considers his petition for allowance of appeal.

Regarding the habeas petition, although habeas petitioners may fully exhaust their state-court remedies without needing to file a petition for allowance of appeal with the Supreme Court of Pennsylvania, if the petitioner files such a petition for allowance of appeal, the petitioner does not exhaust those state remedies until the Supreme Court of Pennsylvania resolves the petition for

allowance of appeal. Here, because the petition for allowance of appeal remains pending, the petitioner has not exhausted his state remedies prior to filing his habeas petition.

Even though the petitioner has not exhausted those state remedies, the court has discretion to stay this matter if, *inter alia*, the petitioner can establish good cause for the failure to exhaust. The petitioner has failed to meet his burden to establish good cause here as (1) he has not identified any reason for the filing of this premature petition other than his state-court counsel having informed him that he should be prepared to file a habeas petition and (2) the petitioner will have ample time to file a timely habeas petition after his state-court proceedings have concluded insofar as he will have more than 70 days left to file the petition within the one-year limitations period. Accordingly, the court will deny the motion to stay and will dismiss this habeas action without prejudice to the petitioner to file a habeas petition after he has fully exhausted his state remedies.

## I. PROCEDURAL HISTORY

On August 10, 2012, a jury sitting in the Court of Common Pleas of Philadelphia County convicted the *pro se* petitioner, Zakee Hamilton ("Hamilton"), of first-degree murder, aggravated assault, attempted murder, possessing instruments of crime, carrying a firearm in public in the City of Philadelphia, and carrying a firearm without a license.[1] *See* Pet. Under 28 U.S.C. § 2254 for

---

[1] The facts underlying these convictions are as follows:

> During the early morning hours of February 21, 2010, members of a vehicle club congregated at a bar they had reserved to celebrate a birthday. When they arrived at the bar, the club members discovered that the bar was overbooked. As the night progressed, different vehicle club members and non-club members began arriving at the bar. The club members protested to the bar owner about the overbooking and lack of security. The bar owner retorted by informing them that if they wanted security, they should provide it. Two club members subsequently stationed themselves at one of the doors and began checking IDs and patting non-club members down for weapons.
>
> Outside the bar, and later in the evening, a fight erupted between multiple women. During the fracas, two men intervened to break up the fight. After the men separated the women, [Hamilton] punched one of the women. During the ensuing altercation, [Hamilton] pulled out a revolver and raised it at two different men—not the men that intervened. The two men immediately ran in two different directions, and [Hamilton] shot both. One of the men was shot in the back of the thigh; he survived and identified [Hamilton].

2

Writ of Habeas Corpus by a Person in State Custody ("Pet.") at ECF p. 2, Doc. No. 1 (referencing convictions for first-degree murder, attempted murder, and aggravated assault); *Commonwealth v. Hamilton*, No. 2729 EDA 2012, 2014 WL 10790207, at *1, 2 (Pa. Super. Oct. 6, 2014) ("*Hamilton I*") (listing Hamilton's convictions); *see also* Docket, *Commonwealth v. Hamilton*, No. CP-51-CR-8998-2010 (Philadelphia Cnty. Ct. Com. Pl.), *available at*: https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-51-CR-0008988-2010&dnh=VzaXY7EyYR%2Fll9uKdhbuBg%3D%3D ("Docket") (showing convictions). That same day, the trial court sentenced Hamilton to an aggregate sentence of life without the possibility of parole to be followed by 25 to 60 years' incarceration. *See Hamilton I* at *2 (stating sentence); Pet. at ECF p. 2 (listing sentences imposed).

Hamilton timely filed a post-sentence motion, which the trial court denied on August 27, 2012. *See Hamilton I* at *2 (discussing filing and resolution of post-sentence motion); Docket (listing date of resolution of motion). Hamilton then timely filed an appeal from his judgment of sentence to the Superior Court of Pennsylvania on September 27, 2022. *See* Docket (showing date Hamilton filed appeal). The Superior Court affirmed Hamilton's judgment of sentence via an

---

A different witness testified [Hamilton] fired a revolver at least six times at various people. Yet another witness—one of the men that initially intervened to break up the fight—testified he saw [Hamilton] holding a revolver, stand over a person lying on the ground, and shoot him twice: once in the abdomen, which struck his aorta causing him to bleed to death, and once in the leg. [Hamilton] also shot a fourth victim, severely wounding her; she identified [Hamilton] from a photo array. In sum, [Hamilton] shot four people, killing one.

Multiple eyewitnesses identified [Hamilton] as having a beard and distinctive teeth, as well as wearing blue jeans and a green shirt or sweater. They also identified [Hamilton] as having a tattoo or religious mark on the center of his forehead. One witness, however, when describing [Hamilton] to the police, initially stated he was 5′10″ tall and had star tattoos on his face and neck. A different witness described [Hamilton] to the police as being 6′2″ tall.

The police did not apprehend [Hamilton] until two months later.

*Hamilton I* at *1–2 (internal citations and footnotes omitted).

3

unpublished decision entered on October 6, 2014. *See Hamilton I* at *2–3.[2] Hamilton did not seek further direct review by the Supreme Court of Pennsylvania. *See Commonwealth v. Hamilton*, No. 114 EDA 2020, 2021 WL 3878645, at *2 (Pa. Super. Aug. 31, 2021) ("*Hamilton II*") (stating that Hamilton "did not file a petition for allowance of appeal to the Pennsylvania Supreme Court").

With his direct appellate review concluding, Hamilton pursued post-conviction collateral relief by filing a *pro se* petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46, on August 25, 2015. *See Hamilton II* at *2; Docket. Months later, the PCRA court appointed counsel to represent Hamilton, and newly appointed counsel filed an amended PCRA petition on July 27, 2018. *See Hamilton II* at *2; Docket. In this amended PCRA petition, Hamilton "argu[ed] trial counsel was ineffective for failure to file a petition for allowance of appeal in the Pennsylvania Supreme Court, and for failing to call three witnesses at trial." *Hamilton II* at *2.

On November 22, 2019, the PCRA dismissed Hamilton's amended PCRA petition under Rule 907 of the Pennsylvania Rules of Criminal Procedure. *See id.* at *2; Docket. Hamilton timely appealed from this dismissal to the Superior Court on December 16, 2019. *See Hamilton II*; Docket.[3] The Superior Court affirmed the PCRA court's order dismissing the amended PCRA petition without a hearing on August 31, 2021. *See Hamilton II* at *6.

---

[2] The Superior Court explained that Hamilton raised two issues on appeal:

> Did the trial court err in failing to find that the evidence was not insufficient to show as a matter of law that Appellant was guilty of first degree murder when the ... testimony presented by the Commonwealth witnesses was so impeached and contradictory as to not be believable beyond a reasonable doubt?
>
> Did the court err in failing to the verdict [sic] was not against the weight of the evidence as the testimony presented by the Commonwealth witnesses was contradictory and even exonerated Appellant?

*Hamilton I* at *2 (quoting appellant's brief).

[3] On appeal, Hamilton raised a single issue of ineffective assistance of counsel for the Superior Court's review:

> Did the lower [c]ourt err in denying a PCRA hearing where there were defense eyewitnesses not called, who have averred that Appellant did not possess or fire a weapon or kill or injure anyone in

4

Although Hamilton did not initially challenge the Superior Court's decision by filing a petition for allowance of appeal with the Supreme Court of Pennsylvania, he filed a petition for leave to file a petition for allowance of appeal *nunc pro tunc* on October 8, 2021. *See* Docket, *Commonwealth v. Hamilton*, No. 69 EM 2021 (Pa.), *available at*: https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=69%20EM%202021&dnh=6V%2FRQJLB0ZPEkXbB%2Bw%2BFUQ%3D%3D. The Supreme Court of Pennsylvania granted this petition via an order entered on March 30, 2022, *see id.*, and Hamilton timely filed a counseled petition for allowance of appeal on April 14, 2022. *See* Docket, *Commonwealth v. Hamilton*, No. 112 EAL 2022 (Pa.), *available at*: https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=112%20EAL%202022&dnh=9EgsPsn%2BXn6naJLkWqa%2Bdg%3D%3D. This petition for allowance of appeal is still pending with the Supreme Court of Pennsylvania.

Hamilton filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 on April 27, 2022.[4] Doc. No. 1. In this habeas petition, Hamilton appears to raise two claims relating to the alleged ineffective assistance of his prior counsel:

> GROUND ONE: Violations of Petitioner's 6th, 8th & 14th U.S. Const. Rights to counsel + Due Process
>
> . . .
>
> Appeal counsel failed to appeal the Superior Court of Pennsylvania's decision to affirm my conviction after the court refused to address my sufficiency of the evidence claim.

---

this case, especially where there was great confusion on the part of the Commonwealth eyewitnesses, some of whom testified that the shooter had facial tattoos and others who said he did not, and where it is clear that Appellant had no such tattoos?

*Hamilton II* at *2 (quoting appellant's brief).
[4] The federal "prisoner mailbox rule" provides that a pro se prisoner's petition is deemed filed "at the time petitioner delivered it to prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275–76 (1988). Here, Hamilton included a declaration that he submitted his section 2254 petition to the prison for mailing on April 27, 2022. *See* Pet. at ECF p. 16. The court therefore uses April 27, 2022, as the filing date.

. . .

    GROUND TWO: Violations of Petitioner's 6th, 8th & 14th U.S. Const. Right to counsel, due process, and compulsory process

. . .

    Trial Counsel failed to call three (3) eye witnesses of the incident who were ready, willing, able to testify and would have provided favorable exculpatory testimony on my behalf.

Pet. at ECF pp. 6, 8.

Because Hamilton did not use this court's standard section 2254 form when filing the instant petition, this court entered an order on May 18, 2022, requiring Hamilton to acknowledge the instructions on the standard form and return a notice of election to have the court construe and rule on the petition as filed. Doc. No. 4. A day later, Hamilton filed a motion to stay and abey this matter. Doc. No. 5. On June 9, 2022, Hamilton returned a notice of election indicating that, *inter alia*, he wanted to have the court rule on his petition as filed. Doc. No. 6.

## II.     DISCUSSION

As indicated above, Hamilton has filed the instant habeas petition despite having a pending petition for allowance of appeal before the Supreme Court of Pennsylvania. He has asked this court to stay the habeas petition while he awaits disposition of his petition for allowance of appeal. *See* Mot. for Stay and Abeyance ("Mot.") at ECF p. 2, Doc. No. 5 ("For the purpose of exhausting state remedies this Petitioner requests that this Honorable court [s]tay the proceedings at the above Docket Number until final resolution of Petitioner's Allowance of Appeal in the Supreme Court of Pennsylvania."). He does not, however, give a reason why the court should stay this habeas petition other than by stating that he filed the petition because his counsel told him that "he should get ready and prepare the . . . Habeas Corpus Petition so as to be in conformance with timeliness." *Id.* at ECF p. 1.

For reasons which the court will discuss in more detail below, the court declines to stay this matter while Hamilton waits for the Supreme Court of Pennsylvania to rule on his petition for allowance of appeal. The court will not stay this matter because (1) Hamilton's claims are unexhausted insofar as he still has an active petition before the Supreme Court of Pennsylvania and (2) Hamilton has failed to show good cause for the court to enter a stay because he will have more than ample time after the Supreme Court of Pennsylvania addresses his petition to file a timely habeas petition in this court.

### A.     Hamilton's Claims Are Unexhausted

This court has screened this matter pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and has determined that there plainly appears to be an exhaustion issue which would prohibit habeas relief at this time.[5] A section 2254 habeas petitioner must first exhaust any state court remedies before filing a habeas petition in federal court: "It is axiomatic that a federal court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts." *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997) (citation omitted); *see also* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."). To exhaust state remedies, a petitioner must invoke "one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also*

---

[5] Rule 4 provides in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

7

28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). The petitioner generally bears the burden to prove all facts establishing exhaustion. *See Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993) ("The habeas petitioner bears the burden of proving that he has exhausted available state remedies." (citations omitted)).

Courts require habeas petitioners to exhaust state remedies because it "addresses federalism and comity concerns by afford[ing] the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Lambert*, 134 F.3d at 513 n.18 (citation and internal quotation marks omitted). Thus, even though the exhaustion requirement is a comity concern and not a jurisdictional concern, it "should be strictly adhered to because it expresses respect for our dual judicial system." *Caswell v. Ryan*, 953 F.2d 853, 857 (3d Cir. 1992) (citation omitted). In addition, "[e]qually as important, federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review." *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

Here, Hamilton acknowledges that he is still currently challenging his conviction and judgment of sentence on collateral review insofar as he has a petition for allowance of appeal currently pending with the Supreme Court of Pennsylvania.[6] *See* Mot. at ECF pp. 1–2. Thus, Hamilton has not exhausted his state court remedies before filing the instant habeas petition.

---

[6] In his motion, Hamilton mentions that his counsel informed him that the Supreme Court of Pennsylvania "[g]ranted allocatur." Mot. at ECF p. 2. As explained above, the Supreme Court of Pennsylvania has not granted allocatur; instead, it merely reinstated Hamilton's right to file a petition for allowance of appeal *nunc pro tunc*. Regardless, even if the Supreme Court of Pennsylvania had granted allocatur, this court's analysis and conclusion regarding exhaustion would be the same.

In reaching this determination, the court recognizes that in some circumstances, a habeas petitioner will have properly exhausted state court remedies without seeking discretionary review by the Supreme Court of Pennsylvania. In this regard, the Pennsylvania Supreme Court issued Order No. 218 on May 9, 2000 ("Order No. 218"), which provided as follows:

> [W]e hereby recognize that the Superior Court of Pennsylvania reviews criminal as well as civil appeals. Further, review of a final order of the Superior Court is not a matter of right, but of sound judicial discretion, and an appeal to this court will be allowed only when there are special and important reasons therefor. Pa.R.A.P. 1114. Further, we hereby recognize that criminal and post-conviction relief litigants have petitioned and do routinely petition this Court for allowance of appeal upon Superior Court's denial of relief in order to exhaust all available state remedies for purposes of federal habeas corpus relief.
>
> In recognition of the above, we hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error. When a claim has been denied relief in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief. This Order shall be effective immediately.

*In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218 Judicial Admin. Docket No. 1 (Pa. May 9, 2000). As shown by the language in Order No. 218, the Supreme Court of Pennsylvania considers a claim of error in certain proceedings to be exhausted so long as that claim is addressed in a final order by the Superior Court. *See id.* Thus, "Order No. 218 serves to remove review of criminal and collateral appeals from the 'normal' and 'established' appellate review procedure in Pennsylvania. . . . Consequently, petitioners **need not** seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a 'full opportunity to resolve any constitutional claims.'" *Lambert v. Blackwell*, 387 F.3d 210, 233–34 (3d Cir. 2004) (emphasis

9

added).[7] Accordingly, "Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c)." *Id.* at 233.

Even though the law in this circuit provides that a petitioner can exhaust state court remedies without seeking further review by the Supreme Court of Pennsylvania, that does not mean that a petitioner has exhausted those remedies if the petitioner chooses to seek review by the Supreme Court of Pennsylvania. Once a petitioner files a petition for allowance of appeal with the Supreme Court of Pennsylvania, the petitioner's state remedies are not exhausted until the Supreme Court resolves the petition. *See Gillette v. Cameron*, Civ. A. No. 3:11-CV-1838, 2012 WL 928606, at *2 (M.D. Pa. Mar. 19, 2012) ("[A]lthough a petitioner is not required to seek appeal in the Pennsylvania Supreme Court, once they do, 'the exhaustion requirement applies.' . . . Here, as Gillette's Allowance of Appeal on his PCRA claim is still pending before the Supreme Court of Pennsylvania, exhaustion is not satisfied." (quoting *Steckley v. Cameron*, Civ. No. 1:11-CV-1417, 2011 WL 5239211, at *2 (M.D. Pa. Nov. 1, 2011))); *Soto v. Wynder*, Civ. A. No. 07-4720, 2008 WL 249816, at *1–2 (E.D. Pa. Jan. 29, 2008) (adopting report which recommended that court dismiss habeas petition without prejudice because petitioner's petition for allowance of appeal was still pending in state court; therefore, "petitioner is not eligible to make application for habeas relief"); *see also Robinson v. Superintendent, SCI Somerset*, 722 F. App'x 309, 312 (3d Cir. 2018) ("Although a Pennsylvania inmate is not required to seek the discretionary review of the Pennsylvania Supreme Court before seeking habeas relief, if an inmate does petition for such review, the federal claim at issue must have been 'fairly presented' in that petition, and the fact that a petitioner fairly raised his claim before a lower state court is not sufficient to satisfy the

---

[7] In *Lambert*, the Third Circuit determined that the habeas petitioner, who had not sought an allowance of appeal from a Superior Court decision affirming the decision of the PCRA court, had, pursuant to Order No. 218, "exhausted her available state court remedies." 387 F.3d at 234.

10

habeas exhaustion requirement." (citation and internal citation omitted)). *But see McWhorter v. McGinley*, Civ. A. No. 18-3704, 2019 WL 3848873, at *5 (E.D. Pa. July 26, 2019) ("McWhorter's sole claim in his habeas petition, that he was denied due process as a result of Smith's alleged perjury, was exhausted when he included it in his 2014 PCRA petition and on appeal to the Pennsylvania Superior Court. That his petition for allowance of appeal to the Pennsylvania Supreme Court is currently pending does not render his claim unexhausted."), *report and recommendation adopted*, 2019 WL 3836350 (E.D. Pa. Aug. 14, 2019). Accordingly, Hamilton has not exhausted his state court remedies insofar as he has sought to have the Supreme Court of Pennsylvania review the Superior Court's affirmance of the dismissal of his amended PCRA petition.

### B.   A Stay is Unwarranted in this Case

If a habeas petition, such as the instant petition, contains unexhausted claims, the court may dismiss it without prejudice to the petitioner to refile the petition after the petitioner exhausts the claims in state court. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982) ("[B]ecause a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief, we hold that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims."). If a habeas petitioner files a mixed petition, meaning a petition containing exhausted and unexhausted claims, a district court may stay the petition "rather than dismiss, holding the petition in abeyance while the petitioner seeks exhaustion of any unexhausted claims in state court." *Heleva v. Brooks*, 581 F.3d 187, 190 (3d Cir. 2009) (citing *Rhines v. Weber*, 544 U.S. 269, 275 (2005)). In addition, "[s]tay and abey is available even when a petitioner has exhausted none of the claims in his petition." *Gerber v. Varano*, 512 F. App'x 131, 135 (3d Cir. 2013) (per curiam) (citation omitted).

Even though district courts have the ability to stay and abey a habeas petition, the Supreme Court has cautioned against liberal use of the stay and abey procedure because:

> [s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

*Rhines*, 544 U.S. at 277. Thus, to justify a stay, a petitioner must satisfy three requirements: (1) good cause for the failure to exhaust; (2) the unexhausted claims are potentially meritorious; and (3) the petitioner must not have engaged in intentionally dilatory litigation tactics. *Heleva*, 581 F.3d at 190, 192 (citing *Rhines*, 544 U.S. at 278).

In addition, "while it usually is within a district court's discretion to determine whether to stay or dismiss a mixed petition, staying the petition is the only appropriate course of action where an outright dismissal could jeopardize the timeliness of a collateral attack." *Crews v. Horn*, 360 F.3d 146, 152 (3d Cir. 2004) (citations and internal quotation marks omitted). As such, "[a] key pre-requisite to the granting of a stay under the standard of *Rhines* is that there be a real danger the petitioner would, after dismissal without prejudice of the federal habeas action, be time-barred upon his return to federal court after the state proceedings are no longer pending." *Osburne v. Kerestes*, No. 15-cv-6493, 2016 WL 2954162, at *4 (E.D. Pa. Mar. 31, 2016), *report and recommendation adopted*, 2016 WL 2939520 (E.D. Pa. May 19, 2016).

In this case, Hamilton has not provided the court with good cause to stay this habeas action while he exhausts his state remedies. As indicated above, he appears to have filed the instant petition only because his state-court counsel told him that he needed to be prepared to file it upon the conclusion of his state proceedings. *See* Mot. at ECF p. 2. This is not good cause for his failure to exhaust.

In addition, the court has no concern that Hamilton will be time barred upon his return to federal court after the state proceedings are no longer pending. In this regard, the AEDPA provides for a one-year statute of limitations, which, as pertinent here, runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

When calculating the commencement of the statute of limitations for purposes of subsection (A), the court must determine when Hamilton's judgment of sentence became final. "Under § 2244(d)(1)(A), a state court criminal judgment becomes 'final' and the statute of limitations begins to run, 'at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires.'" *Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999) (quoting *Kapral v. United States*, 166 F.3d 565, 575 (3d Cir. 1999) and citing *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999)). Here, Hamilton's judgment of sentence became final on November 5, 2014, which was 30 days after the Superior Court affirmed his judgment of sentence and he did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania. *See* Pa.R.A.P. 1113(a) ("Except as otherwise prescribed by this rule, a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed."). Thus, AEDPA's one-year statute of limitations began to run on November 6, 2014, and Hamilton had until November 6, 2015, to file his section 2254 petition unless any statutory or equitable tolling period applies.

Concerning statutory tolling, the AEDPA contains a tolling provision, which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any

13

period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). A "properly filed application" for state post-conviction collateral review is "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998). "State prisoners therefore must file their state claims promptly and properly under state law in order to preserve their right to litigate constitutional claims that are more than one year old in federal court." *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001). If the state court dismisses a late-filed application for post-conviction collateral review because it is time-barred, the application does not constitute a "properly filed application" for AEDPA tolling purposes. *See Merrit v. Blaine*, 326 F.3d 157, 165–66 (3d Cir. 2003).

As indicated above, Hamilton timely filed a PCRA petition in the Court of Common Pleas on August 25, 2015.[8] As such, he would be entitled to statutory tolling while he pursued that PCRA petition through the state courts. Prior to the beginning of this statutory tolling period, 293 days of the one-year habeas limitations period passed. Therefore, once the Supreme Court of Pennsylvania resolves Hamilton's pending petition for allowance of appeal, he would still have 72 days to timely file a habeas petition. Therefore, dismissing without prejudice, rather than staying this action, would not affect Hamilton's rights to refile a habeas petition asserting any claim preserved in the PCRA proceedings, including those appellate proceedings. *See Hicks v. Wetzel*, No. 1:17-CV-1969, 2019 WL 1204900, at * (M.D. Pa. Mar. 14, 2019) ("In sum, because there is no real danger that refusing to grant a stay of these federal proceedings will result in his federal claims becoming time barred, the Court will deny petitioner's motion to stay these federal habeas proceedings and dismiss the case without prejudice." (citations omitted)); *see also Nguyen Vu v. Wetzel*, Civ. A. No. 11-3226, 2012 WL 1071188, at *2 (E.D. Pa. Mar. 30, 2012) ("At the time that his PCRA

---

[8] *See* 42 Pa. C.S. § 9545(b)(1) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final . . . .").

14

petition is no longer pending, the one (1) year grace period will begin to run and Vu will have 111 days to file a timely § 2254 petition. If Vu acts with reasonable diligence after his PCRA proceedings conclude, there is little danger that federal review of Vu's claims will be foreclosed due to lack of timelines."); *cf. Crews*, 360 F.3d at 154 (explaining that 30 days is "reasonable interval" after denial of relief in state court to return to federal court).

### III. CERTIFICATE OF APPEALABILITY

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a habeas proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). A judge may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing requires a habeas petitioner to demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

Here, the court declines to issue a certificate of appealability as jurists of reason would not find it debatable whether the court should dismiss without prejudice this habeas petition because Hamilton has not fully exhausted his state court remedies.

### IV. CONCLUSION

Hamilton filed the instant habeas petition before his proceedings on post-conviction collateral appeal have concluded. Accordingly, the court dismisses the petition without prejudice to Hamilton to refile it once he fully exhausts his available state court remedies.[9]

---

[9] This determination applies only to exhaustion of state remedies and not to any argument that any of Hamilton's claims are procedurally defaulted. In this regard, and as stated above, Hamilton seemingly raises two claims in his

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

habeas petition, one relating to direct appellate counsel's failure to file a petition for allowance of appeal, *see* Pet. at ECF p. 6, and the other relating to trial counsel's failure to call three eyewitnesses who would have provided favorable, exculpatory testimony, *see id.* at ECF p. 8. It appears that these claims were presented to the PCRA court and rejected by that court. *See Hamilton II* at *2. Yet, when Hamilton appealed from the PCRA court's dismissal order to the Superior Court, he only raised one claim of error, which the Superior Court interpreted as a claim that counsel was ineffective for failing to call two witnesses. *See id.* at *3 ("Appellant alleged that trial counsel was ineffective for failing to call twin sisters Stephanie Jones and Syreeta Jones as witnesses at trial."); *id.* at *2 n.2 (explaining that Hamilton did not provide an affidavit for the third witness during the PCRA proceedings, "and no explanation was given for the absence. Additionally, Appellant appears to have abandoned any claims regarding this third witness on appeal").